**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ERNEST PAGAN,<br>*Plaintiff*,<br><br>v.<br><br>NORTH ATLANTIC STAES REGIONAL COUNCIL OF CARPENTERS,<br>*Defendants*. | No. 3:25-cv-01560 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Ernest Pagan ("Plaintiff") has sued the North Atlantic States Regional Council of Carpenters (the "Council") and Miguel Fuentes (collectively, "Defendants") for defamation, invasion of privacy by false light, intentional infliction of emotional distress, and negligent infliction of emotional distress under Connecticut law.

Defendants removed this case from the Connecticut state court, asserting federal-question jurisdiction under 28 U.S.C. § 1331 because, in their view, Plaintiff's state-law claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). Notice of Removal, ECF No. 1. Defendants subsequently moved to dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6). Mot. to Dismiss, ECF No. 20.

For the following reasons, Defendants' motion to dismiss is **DENIED** without prejudice to renewal.

By **September 11, 2026**, the Defendants shall file a supplemental memorandum, which (1) identifies the relevant provisions of the Local 326 Bylaws, the North Atlantic States Regional Council of Carpenters bylaws, and the UBC Constitution, for the purposes of determining

subject-matter jurisdiction under § 301 of the LMRA, and upon which their complete-preemption argument relies; (2) explains why resolution of each identified claim requires interpretation of the identified provision or provisions, rather than mere reference to or consultation of the governing documents; and (3) attaches as exhibits to the supplemental memorandum any and all of the relevant governing documents referenced in it.

By **October 2, 2026**, the Plaintiff may file a response to any such submission.

By **October 16, 2026**, any reply to any such response shall be filed.

If the Court determines that subject-matter jurisdiction exists, the Defendants may renew their motion to dismiss by filing a notice of renewal incorporating ECF Nos. 20, 20-1, and 22 by reference. Unless otherwise ordered, no additional briefing on the Rule 12(b)(6) issues will be necessary. If the Court determines that subject-matter jurisdiction is lacking, the Court will address the appropriate disposition of this removed action at that time.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

On September 18, 2025, Defendants removed this action from Connecticut Superior Court. Notice of Removal, ECF No. 1. Although Mr. Pagan's Complaint asserts claims arising solely under Connecticut law, the Defendants contend that federal jurisdiction exists because Mr. Pagan's claims are completely preempted by § 301 of the LMRA. *Id.* ¶¶ 6–8.

The Defendants assert that Local Union 326 ("Local 326") is governed by bylaws addressing, among other things, the authority of elected officers, the procedures for disbursement of Local 326 funds, the establishment of committees, and Local 326's relationship with the Council and the United Brotherhood of Carpenters ("UBC"). *Id.* ¶ 5. According to the

Defendants, the Local 326 Bylaws incorporate the Council's bylaws and the UBC Constitution. *Id.*

The Defendants argue that resolution of Mr. Pagan's claims necessarily requires interpretation of those governing documents. Specifically, they contend that determining whether Mr. Pagan engaged in malfeasance with respect to the expenditure of Local 326 funds would require interpretation of "the stated procedure for making expenditures and specifically whether membership ratification is a necessary condition of the expenditure at issue." Mem. in Supp. of Mot. to Dismiss at 19, ECF No. 20-1. They similarly contend that determining whether Mr. Pagan improperly excluded Mr. Fuentes from committees requires consideration of "the procedure for establishing committees within Local 326." *Id.* The Defendants therefore maintain that Mr. Pagan "can only establish the falsity of the statements at issue, an essential element of his claims, by demonstrating that the expenditure was proper and in accordance with the union's governing documents." *Id.*

Mr. Pagan argues that his state-law tort claims may be resolved without interpreting any union governing document. Mem. in Opp'n, ECF No. 21.

The Local 326 Bylaws, the Council's bylaws, and the UBC Constitution upon which Defendants rely, however, have not been submitted to the Court. Nor have Defendants identified the particular provisions of those documents whose meaning the Court allegedly must resolve to adjudicate Mr. Pagan's claims.

**B. Procedural Background**

On August 25, 2025, Ernest Pagan commenced this action in Connecticut Superior Court for the Judicial District of New Haven.

On September 18, 2025, North Atlantic States Regional Council of Carpenters and Miguel Fuentes removed the action to this Court. Notice of Removal, ECF No. 1.

On September 25, 2025, the case was reassigned to this Court. Order of Transfer, ECF No. 18.

On October 3, 2025, the Defendants moved to dismiss Mr. Pagan's Complaint with prejudice. Mot. to Dismiss, ECF No. 20; Mem. in Supp. of Mot. to Dismiss, ECF No. 20-1.

On October 23, 2025, Mr. Pagan filed a memorandum in opposition. Mem. in Opp'n, ECF No. 21.

On November 5, 2025, the Defendants filed a reply. Reply, ECF No. 22.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (holding that dismissal under Rule 12(b)(1) is appropriate when a federal court lacks the power to adjudicate the dispute).

In considering subject-matter jurisdiction, a court "must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) (describing the standard applicable to a Rule 12(b)(1) challenge). A court also may resolve disputed jurisdictional questions "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)). *See also Carter v.*

*HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (recognizing that a party may raise a fact-based jurisdictional challenge through "evidence beyond the [p]leading").

**B. 12(b)(6)**

To survive a motion to dismiss under 12(b)(6), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *See also York v. Ass'n of the Bar of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure

to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.").

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (internal quotation marks omitted).

## III. DISCUSSION

Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees . . . or between any such labor organizations." 29 U.S.C. § 185(a). A union constitution may constitute a "contract" for purposes of § 301. *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 98–101 (1991) (holding that a union constitution is a contract between labor organizations within the meaning of § 301); *Shea v. McCarthy*, 953 F.2d 29, 30–31 (2d Cir. 1992) (recognizing federal jurisdiction under § 301 over claims arising from a union constitution).

Under the complete-preemption doctrine, certain state-law claims falling within § 301 are "transformed, for jurisdictional purposes, into federal claims." *Sullivan v. Am. Airlines, Inc.*, 424 F.3d 267, 272 (2d Cir. 2005) (explaining that complete preemption provides an exception to the well-pleaded complaint rule). Section 301 preempts a state-law claim where resolution of that claim is "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985) (holding that state-law claims substantially dependent upon analysis of a labor contract are preempted).

But the mere relevance of a labor contract is insufficient. "[W]here the resolution of a state-law claim depends upon an interpretation of the [labor contract], the claim is preempted." *Foy v. Pratt & Whitney Grp.*, 127 F.3d 229, 233 (2d Cir. 1997) (distinguishing claims requiring interpretation of a labor agreement from claims that can be resolved independently of it). And "the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994) (holding that mere consultation of a collective-bargaining agreement does not establish preemption). *See also Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409–10

(1988) (holding that, even where a state-law claim and a labor-contract dispute involve "precisely the same set of facts," the state-law claim remains independent if it "can be resolved without interpreting the agreement itself").

The Defendants argue that all of Mr. Pagan's claims are preempted by § 301 of the LMRA because their resolution would require the Court to interpret and apply the Local 326 Bylaws, the Council's bylaws, and the UBC Constitution. Mem. in Supp. of Mot. to Dismiss at 18–20, ECF No. 20-1.

According to the Defendants, the Complaint concerns Mr. Fuentes's statements regarding Mr. Pagan's alleged "misappropriation of local union funds in settling a harassment lawsuit and concealing such payment from the membership," as well as Mr. Pagan's conduct in union office. *Id.* at 19. The Defendants emphasize that the Complaint refers to Local 326's "general fund," "committees," "discrepancies in the accounting," "member approval," and the Council's "approval" in connection with a nonprofit organization. *Id.*

More specifically, the Defendants argue that "[t]o ascertain whether [Mr. Pagan] committed malfeasance in his capacity as an elected officer of Local 326, one would need to interpret the stated procedure for making expenditures and specifically whether membership ratification is a necessary condition of the expenditure at issue." *Id.* They further argue that "[t]o determine whether [Mr. Pagan] abused his power to exclude Mr. Fuentes from a committee, one would need to know the procedure for establishing committees within Local 326." *Id.* Thus, in the Defendants' view, Mr. Pagan "can only establish the falsity of the statements at issue, an essential element of his claims, by demonstrating that the expenditure was proper and in accordance with the union's governing documents." *Id.*

In response, Mr. Pagan argues that his claims "are completely independent tort claims and they do not require any analysis or interpretation of the terms of the union contract." Mem. in Opp'n at 11, ECF No. 21. Relying on *Livadas* and *Lingle*, Mr. Pagan emphasizes the distinction between interpreting a labor agreement and merely consulting it. *Id.* at 11–12. He therefore argues that, even if the union governing documents bear on the same underlying facts, his claims remain independent because they may be resolved without interpreting those documents. *Id.* at 12; *see also Lingle*, 486 U.S. at 409–10 (holding that, even where resolution under state law and a labor agreement "would require addressing precisely the same set of facts," a state-law claim remains independent "as long as the state-law claim can be resolved without interpreting the agreement itself"); *Livadas*, 512 U.S. at 124 ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.").

In their reply, the Defendants argue that "inevitably one will need to consult the Bylaws of Local 326 and/or the UBC Constitution to determine whether any expenditure at issue was properly enacted." Reply at 6 n.2, ECF No. 22.

The Court disagrees, at least for now.

At this stage, the Court cannot determine whether § 301 supplies subject-matter jurisdiction over this action. Under the complete-preemption doctrine, state-law claims falling within the scope of certain federal statutes may be "transformed, for jurisdictional purposes, into federal claims." *Sullivan*, 424 F.3d at 272 (explaining that statutes possessing sufficiently "extraordinary" preemptive force can transform state-law claims into federal claims for jurisdictional purposes). Section 301 therefore may preempt a state-law claim where evaluation of that claim "is inextricably intertwined with consideration of the terms of the labor contract."

*Allis-Chalmers*, 471 U.S. at 213 (explaining that state-law rights cannot be adjudicated independently where their resolution is "inextricably intertwined" with the terms of a labor agreement). But "[w]here the resolution of a state-law claim depends upon an interpretation of the [labor contract], the claim is preempted." *Foy*, 127 F.3d at 233. By contrast, "the bare fact that a collective-bargaining agreement will be consulted" does not establish preemption. *Livadas*, 512 U.S. at 124.

The Defendants' jurisdictional theory therefore turns on whether adjudicating Mr. Pagan's claims requires the Court to interpret the relevant union governing documents, rather than merely consult or refer to them. And the Defendants themselves recognize that distinction. Their memorandum states that "[t]o trigger preemption, it is not enough that a court must 'consult' a labor contract," and instead argues that Mr. Pagan's claims require actual interpretation of the Local 326 Bylaws, the Council's bylaws, and the UBC Constitution. Mem. in Supp. of Mot. to Dismiss at 18, ECF No. 20-1.

The present record, however, does not permit the Court to determine whether such interpretation is necessary. Although the Defendants describe generally what the governing documents purportedly address, they have not submitted the Local 326 Bylaws, the Council's bylaws, or the UBC Constitution. Nor have they identified the specific provisions of those documents whose meaning the Court must resolve.

The Notice of Removal states, for example, that the Local 326 Bylaws address "the authority and powers of elected officers (including the president), the procedure for the disbursement of Local Union funds, [and] the establishment of committees," and states that "[t]he Bylaws of Local 326 incorporate by reference the Bylaws of the Council and the Bylaws

of the UBC." Notice of Removal ¶ 5, ECF No. 1. But the Notice of Removal does not identify or quote any particular provision that the Court allegedly must construe.

That omission is significant because the statements alleged in the Complaint present both factual questions and potential questions of contractual interpretation. Mr. Pagan alleges, for example, that Mr. Fuentes stated "Jeff Wolcheski and Ernest Pagan were taking money from the general fund," "They were taking money from the general fund," and "Money was stolen from the general fund without member approval to settle a sexual harassment suite [sic] against Jeff and Ernie." Compl. ¶¶ 13(A), 14(B), 14(G), ECF No. 1-1. Mr. Pagan also alleges that Mr. Fuentes stated that he "has been excluded from different committees because Jeff and Ernie didn't want him looking into where the funds had been used." *Id.* ¶ 14(C).

Whether money was taken or missing, whether a particular expenditure occurred, whether membership approval actually occurred, what Mr. Fuentes said, and whether those statements were false may involve factual determinations. By contrast, whether the governing documents required membership approval for a particular expenditure, or what authority the president possessed with respect to the formation or membership of committees, may require interpretation of those documents. *See Lingle*, 486 U.S. at 407 (recognizing that "purely factual questions" concerning an employee's or employer's conduct and motives do not require interpretation of a collective-bargaining agreement); *id.* at 409–10 (holding that a state-law claim remains independent if it "can be resolved without interpreting the agreement itself").

Indeed, during the internal trial-committee proceeding, Mr. Fuentes stated: "Roger, no one stole money. The question was whether people brought an expenditure to the floor for the membership to approve. That's it." Ex. A to Mem. in Opp'n, ECF No. 21-1, Trial Tr. at 34. Mr.

Fuentes also stated: "I absolutely had a conversation with these gentlemen. I do not deny the conversation." *Id.*, Trial Tr. at 40.

The Court may consider materials beyond the pleadings when resolving a disputed jurisdictional question. *See Karlen*, 638 F. Supp. 2d at 298 (recognizing that a court may resolve disputed jurisdictional questions "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing"); *Carter*, 822 F.3d at 56 (recognizing that a party may raise a fact-based jurisdictional challenge by "proffering evidence beyond the [p]leading"). But the materials presently before the Court do not include the documents upon which Defendants' asserted basis for federal jurisdiction depends.

The Court therefore cannot determine whether the alleged need to address union rules presents an actual dispute over the meaning of a contractual provision, as required for § 301 preemption, or merely requires consultation of the governing documents in resolving factual issues. *See Livadas*, 512 U.S. at 124 ("[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."); *Lingle*, 486 U.S. at 409–10 (explaining that even where the contractual and state-law inquiries involve "precisely the same set of facts," the state-law claim remains independent if it "can be resolved without interpreting the agreement itself"); *cf. Wealthberg v. GE Credit Union*, No. 3:20-cv-01314 (VAB), ECF No. 37 at 13 (D. Conn. Sept. 24, 2021) ("[B]ecause the issue of the Court's jurisdiction . . . will benefit from proper discovery . . . Defendant's motion to dismiss on these grounds will be denied without prejudice to renewal.").

Instead, limited supplemental briefing, together with submission of the governing documents upon which Defendants rely, should permit the Court to determine whether

adjudication of Mr. Pagan's claims requires interpretation of a qualifying labor contract and, therefore, whether § 301 provides this Court with subject-matter jurisdiction.

Accordingly, the Defendants' motion to dismiss will be denied without prejudice to renewal.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss, ECF No. 20, is **DENIED** without prejudice to renewal.

By **September 11, 2026**, the Defendants shall file a supplemental memorandum, which (1) identifies the relevant provisions of the Local 326 Bylaws, the North Atlantic States Regional Council of Carpenters bylaws, and the UBC Constitution, for the purposes of determining subject-matter jurisdiction under § 301 of the LMRA, and upon which their complete-preemption argument relies; (2) explains why resolution of each identified claim requires interpretation of the identified provision or provisions, rather than mere reference to or consultation of the governing documents; and (3) attaches as exhibits to the supplemental memorandum any and all of the relevant governing documents referenced in it.

By **October 2, 2026**, the Plaintiff may file a response to any such submission.

By **October 16, 2026**, any reply to any such response shall be filed.

If the Court determines that subject-matter jurisdiction exists, the Defendants may renew their motion to dismiss by filing a notice of renewal incorporating ECF Nos. 20, 20-1, and 22 by reference. Unless otherwise ordered, no additional briefing on the Rule 12(b)(6) issues will be necessary. If the Court determines that subject-matter jurisdiction is lacking, the Court will address the appropriate disposition of this removed action at that time.

**SO ORDERED** at New Haven, Connecticut, this 14th day of August, 2026.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE